# United States Court of Appeals
## For the First Circuit

No. 01-2752

JOSE A. BATIZ CHAMORRO,

Plaintiff, Appellant,

v.

PUERTO RICAN CARS, INC., D/B/A THE HERTZ CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Jorge Martínez Luciano, and Law Offices of Pedro Ortiz Alvarez, PSC on brief for appellant.
Pedro J. Manzano-Yates, Luis F. Colón-Conde, and Fiddler Gonzalez & Rodriguez, LLP on brief for appellee.

August 27, 2002

**SELYA**, **Circuit Judge**.   On October 8, 1999, plaintiff-appellant José A. Batiz Chamorro (Batiz) invoked federal question jurisdiction, 28 U.S.C. § 1331, and brought an employment discrimination action in the United States District Court for the District of Puerto Rico against defendant-appellee Puerto Rican Cars, Inc., d/b/a The Hertz Corporation  (Hertz).   Given the posture of this appeal, the details of the underlying dispute between Batiz and Hertz need not concern us.   What matters is that a little over two years after suit had been started, the district court dismissed the case with prejudice for want of prosecution and failure to comply with the court's orders.   Batiz appeals.   We affirm.

The travel of the case is illuminating.   After receiving an extension, Hertz filed its answer on December 28, 1999.   In February of 2000, Batiz initiated a request for production of documents.   See Fed. R. Civ. P. 34.   The parties exchanged some desultory communications about this request, but could not achieve consensus.   In an attempt to bring matters to a head, Hertz moved for a protective order on grounds that the document request intruded upon time-barred periods and sought irrelevant materials. Batiz did not oppose this motion, and only a few uncontroversial

documents were produced.[1]  Batiz made no further efforts at discovery, and the case stalled.

On October 25, 2000, the district court noted Batiz's apparent lack of interest in pressing forward and ordered him to show cause why the action should not be dismissed for want of prosecution.  Batiz received an extension of time within which to reply and thereafter filed a response in which he (1) explained what steps he had taken to prosecute the action, (2) pledged "to avoid further delays," and (3) beseeched the court for an "opportunity to continue" the pursuit of his claims.  The district court did not press the show-cause order, but, rather, scheduled a status conference for December 15, 2000, at which time the parties were instructed to inform the court no later than February 28, 2001, about how they intended to proceed with the diligent prosecution of the action.  Batiz ignored this order.  Hertz complied with it, listing various depositions that had been taken following the status conference, describing the parties' informal agreement to stay further discovery until April 17, 2001, and limning its future plans (including its intention to move for summary judgment).

Between May and September of 2001, the parties engaged in limited discovery (e.g., Hertz unsuccessfully requested the

---

[1]A magistrate judge eventually granted the unopposed motion on December 5, 2000.

production of documents and deposition transcripts, and Batiz eventually made a second request for production of documents). These maneuverings generated no docket activity. Apparently dismayed both by the lack of activity and by Batiz's failure to file the mandated progress report, the district court invoked Rule 41(b) of the Federal Rules of Civil Procedure[2] and dismissed the case with prejudice by order dated October 18, 2001. The clerk entered the order on the docket on October 23, and Batiz filed a timely motion to alter or amend. See Fed. R. Civ. P. 59(e). Hertz opposed the motion. On November 5, the district court summarily denied reconsideration. This appeal ensued.

Before we can address the merits of the appeal, we first must dispel a procedural miasma created by poor draftsmanship. As a general rule, a notice of appeal must specify the orders and judgments that the appellant intends to contest. See Fed. R. App. P. 3(c)(1)(C). The notice of appeal in this case targets only the order denying reconsideration (to the exclusion of the order dismissing the action). This raises the question of whether the notice, as drafted, confers jurisdiction upon this court to review the original order of dismissal.

Hertz's position — that Batiz has forfeited any right to have this court review the district court's original decision – is

---

[2]In pertinent part, this rule authorizes a district court to dismiss an action "for failure of the plaintiff to prosecute or to comply with . . . any order of the court." Fed. R. Civ. P. 41(b).

not entirely without force.  The pendency of a timely Rule 59(e) motion tolls the running of the appeal period from the original judgment.  See Fed. R. App. P. 4(a)(4); Fed. R. Civ. P. 59(e).  Nevertheless, an appeal from an order denying such a motion is generally not considered to be an appeal from the underlying judgment.  Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991).

The holding in Mariani-Giron does not mean, however, that an appellate court invariably is bound to read the notice of appeal literally.  Such formalism is not obligatory; instead, our precedents encourage us to construe notices of appeal liberally and examine them in the context of the record as a whole.  See e.g., Kotler v. Am. Tobacco Co., 981 F.2d 7, 11 (1st Cir. 1992).  That function proceeds with a recognition that the core purpose of a notice of appeal is to "facilitate a proper decision on the merits."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In light of these principles, it is not surprising that courts faced with poorly drafted notices of appeal occasionally have been known to rescue the technically defaulted portion of an appeal.  E.g., Town of Norwood v. New Eng. Power Co., 202 F.3d 408, 415 (1st Cir. 2000).  We caution, however, that such rescue missions are not automatic, and litigants will do well to draft notices of appeal with care.

Against this backdrop, we inspect Batiz's notice of appeal. Notwithstanding its focus on the order denying reconsideration, the text of the notice mentions the original judgment and notes that "[s]aid Judgment dismissed the . . . action on the ground[] of want of prosecution." Read in context, this reference is consistent with a desire to have this court review the propriety of the original dismissal for want of prosecution. The fact that Batiz, in his appellate briefs, presents exactly the same arguments as to the original order of dismissal and as to the denial of his subsequent motion for reconsideration provides further justification for ascribing to him an intent to seek review of both orders. See Town of Norwood, 202 F.3d at 415. Finally, both sides have fully briefed the merits, and undertaking appellate review of the original order of dismissal would not unfairly prejudice Hertz. Cf. Kelly v. United States, 789 F.2d 94, 96 n.3 (1st Cir. 1986) (explaining that an appellee who is not misled by a misstatement in a notice of appeal is, by definition, not prejudiced by it). We conclude, therefore, that the notice of appeal, while carelessly drafted, provides a sufficient foundation for the exercise of appellate jurisdiction over the original order of dismissal. See Foman, 371 U.S. at 181-82; In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d 564, 567 (1st Cir. 1995); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 839-40 (1st Cir. 1993).

Having resolved the jurisdictional question, we turn to the two disputed orders. We begin our analysis with bedrock: the effective administration of justice requires that trial courts possess the capability to manage their own affairs. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). The authority to order dismissal in appropriate cases is a necessary component of that capability. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962). Moreover, the inherent power of trial courts to dismiss cases for want of prosecution or disregard of judicial orders is reinforced and augmented by Rule 41(b). See id.; HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988).

It is self-evident that "courts cannot function if litigants may, with impunity, disobey lawful orders." HMG Prop. Investors, 847 F.2d at 916. For that reason, courts must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants. It follows logically that "the trier's determination to dismiss a case for such reasons should be reviewed only for abuse of discretion." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1117 (1st Cir. 1989).

Even so, dismissal with prejudice is a severe sanction. To ensure against arbitrariness, a reviewing court must balance the trial court's authority to impose such a sanction against the obvious policy considerations that favor disposition of cases on

the merits.  See Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971).  This is an "open-ended balancing test," HMG Prop. Investors, 847 F.2d at 917 n.13, conducted with due respect for the trial court's first-hand knowledge of the nuances of the case and the (sometimes recondite) agendas of the parties.

In Enlace Mercantil Internacional, Inc. v. Senior Industries, Inc., 848 F.2d 315, 317 (1st Cir. 1988), we said that the sanction of dismissal for want of prosecution is appropriate only when the plaintiff's misconduct has been "extreme."  For this purpose, however, extreme misconduct comes in many shapes and forms, ranging from protracted foot-dragging to defiance of court orders to ignoring warnings to other aggravating circumstances. Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987).  A classic form of aggravating circumstance is a wasteful expenditure of the court's time.  Enlace, 848 F.2d at 317.

In this instance, the district court dismissed the case because Batiz, after being suitably forewarned – the court earlier had issued a show-cause order that specifically mentioned the possibility of dismissal – nevertheless flouted the court's direct order to furnish a progress report.  In the district court's view, this stonewalling not only exhibited "a disregard for the court's time and schedule" but also made manifest "a repeated unwillingness to move this case forward."  These reasons, if well-founded,

-8-

describe conduct extreme enough to warrant dismissal. The question, then, is whether the district court's description of Batiz's behavior finds adequate support in the record. We think that it does.

The district court's decree of December 15, 2000 "instructed [the parties] to inform the Court by February 28, 2001, how they will proceed with this case." This was clear, direct, and to the point: the order obligated both Hertz and Batiz to file progress reports within the stipulated time frame. Hertz complied; Batiz did not. That was a blatant violation of the court's order – and one that undermined the court's studied effort to manage its docket. See Tower Ventures, Inc. v. City of Westfield, ___ F.3d ___, ___ (1st Cir. 2002) [No. 02-1145, slip op. at 5-6] ("To manage a crowded calendar efficiently and effectively, a trial court must take an active role in case management. Scheduling orders are essential tools in that process — and a party's disregard of such orders robs them of their utility."). This conduct breached Batiz's duty to the court, see Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998) (discussing a party's "unflagging duty to comply with clearly communicated case-management orders"), and wasted the court's time in the bargain.

In an attempt to confess and avoid, Batiz points to Hertz's progress report, tells us that he agrees with Hertz's assessment, and argues that it would have been superfluous to file

his own report because such a statement would have covered the same ground. That argument smacks of post-hoc rationalization, and the district court, in denying reconsideration, flatly rejected it. In all events, the argument goes wide of the mark. The district court directed both parties to file progress reports and it was entitled to know how each of them viewed the case. Batiz could have complied with the order either by a submission that tracked Hertz's report or by simply stating that he agreed with Hertz's summary. What he could not do was to take it upon himself to ignore the order and leave the district court guessing.

Batiz's other justification for noncompliance is that his counsel was busy with a complicated jury trial. We consistently have refused to accept such excuses, see, e.g., Tower Ventures, ___ F.3d at ___ n.7 [slip op. at 7 n.7]; Mendez v. Banco Popular de P.R., 900 F.2d 4, 8 (1st Cir. 1990); Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (per curiam), and we see no basis for applying a different standard here. The fact that an attorney has other fish to fry is not an acceptable reason for disregarding a court order.

In a last-ditch effort to salvage the case, Batiz asserts that the district court violated its own local rules. Focusing on D.P.R.R. 313, he argues that the rule limits a trial judge's authority, under Rule 41(b), to dismiss a case with prejudice for want of prosecution. To the extent that this argument is true, it

-10-

does not help Batiz: the district court's action was fully consistent with D.P.R.R. 313 as presently written. We explain briefly.

Batiz relies on cases in which we vacated dismissals for want of prosecution because they clashed with the District of Puerto Rico's local rules. E.g., Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555 (1st Cir. 1989); Martinez Class v. Caribe Hilton Hotel, 784 F.2d 12 (1st Cir. 1986). Each of those decisions, however, was premised upon a finding that the order of dismissal conflicted with a now-defunct provision of the local rules. That provision limited dismissal for want of prosecution to cases in which "no substantial proceedings of record have been taken for a term of six (6) months as shown by the record docket." D.P.R.R. 313.1(B) (repealed Apr. 29, 1997). Since substantial proceedings had occurred within the proscribed six-month period, we held that dismissal for want of prosecution was improper. See Jardines Bacata, 878 F.2d at 1560; Martinez Class, 784 F.2d at 12.

The case at bar arises under a different regime. In its amended form, applicable here, the comparable provision of D.P.R.R. 313.1(B) restricts the class of cases subject to dismissal for want of prosecution to those in which "a certificate of readiness for trial has not been filed within one (1) year after the filing of the action." Batiz does not allege that this case falls within the prophylaxis of that restriction.

Relatedly, Batiz complains about the fact that the dismissal operates with prejudice, asseverating that this feature violates D.P.R.R. 313.2. But that rule allows the court to direct that the dismissal of a case will operate as an adjudication on the merits. See D.P.R.R. 313.2 (stating that the dismissal of a case "shall not operate as an adjudication of the merits, unless the Court . . . directs otherwise") (emphasis supplied). The court made such an express direction here.

We add a coda. Although Batiz's arguments are unpersuasive, the court imposed a heavy-duty sanction. Were Batiz's disregard of the court's order an isolated incident, this sanction — dismissal with prejudice — would give us pause. Here, however, the district court supportably viewed Batiz's failure to file the court-ordered progress report as part of a pattern. On at least two occasions, Batiz had neglected to respond to discovery requests; he had not replied either to Hertz's motion for a protective order or to Hertz's demands for document production; and over a two-year span, he had made only a token effort at discovery.[3] The case languished to such an extent that the court

---

[3]We note that Batiz, in responding to the show-cause order on November 16, 2000, told the district court that he would "tailor" a revised request for production of documents in an effort to quell the objections raised in Hertz's motion for a protective order. Despite this pledge, a revised request was not served until September of 2001. This inexplicable ten-month gap aptly illustrates why the district court (understandably, in our view) grew impatient.

-12-

was forced to issue a show-cause order in an effort to move it along. That order, although ultimately withdrawn, placed Batiz on notice that further procrastination in the prosecution of his action would not be well-received. Under the circumstances, Batiz spurned the order to file a progress report at his peril. See Rosario-Diaz, 140 F.3d at 315.

We need go no further. Historically, appellate courts have not lent a sympathetic ear to the importunings of those who claim that a trial judge abused his or her discretion by dismissing a case for want of prosecution. E.g., Damiani v. R.I. Hosp., 704 F.2d 12, 17 (1st Cir. 1983). This case is in that tradition. By lollygagging throughout the proceedings, Batiz set the stage for the denouement that was to follow. When he disregarded the order to file a progress report, that was the straw that broke the dromedary's back. Given that omission and what had occurred (or, more precisely put, what had not occurred) over the two-year life of this case, the trial court did not abuse its discretion by dismissing this action for want of prosecution.[4] Because that is

---

[4]It is, of course, settled that a trial judge does not need to exhaust milder sanctions before resorting to dismissal when a noncompliant litigant has disregarded court orders and been suitably forewarned. E.g., Tower Ventures, ___ F.3d at ___ [slip op. at 5]; Top Entertainment Inc. v. Ortega, 285 F.3d 115, 119 (1st Cir. 2002); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1076 (1st Cir. 1990); Figueroa-Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990); HMG Prop. Investors, 847 F.2d at 918.

so, the court, by definition, did not abuse its discretion in refusing to alter or amend the judgment.

**<u>Affirmed</u>**.